IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES H. JONES, | : | CIVIL ACTION |
| Petitioner | : | |
| | : | |
| VS. | : | |
| | : | |
| KENNETH KYLER, et al., | : | |
| AND | : | |
| THE DISTRICT ATTORNEY OF | : | |
| THE COUNTY OF PHILADELPHIA, | : | |
| AND | : | |
| THE ATTORNEY GENERAL OF | : | |
| THE STATE OF PENNSYLVANIA, | : | |
| Respondents | : | NO.    02-09510 |

REPORT AND RECOMMENDATION

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

     Currently pending before the Court is a Petition for Writ of Habeas Corpus remanded from the Third Circuit for reconsideration by this Court.  For the reasons which follow, the Court again recommends that the petition be denied.

I.  PROCEDURAL HISTORY[1]

     Following a jury trial presided over by the Honorable Joseph T. Murphy of the Philadelphia Court of Common Pleas, petitioner was convicted of rape and attempted involuntary deviate sexual intercourse on June 6, 1988.  Judge Murphy sentenced petitioner to an aggregate term of six and one-half to twenty years imprisonment.  On direct appeal, the Superior Court of Pennsylvania affirmed the judgment of sentence in a memorandum opinion dated December 11, 1989.

---

[1]  The procedural history was taken from this Court's previous Report and Recommendation in this matter, dated July 23, 2003.   Jones v. Kyler, Civ. A. No. 02-9510, 2003 WL 22331773, *1-*2 (E.D. Pa. July 23, 2003).

Commonwealth v. Jones, 571 A.2d 502 (Pa. Super. 1989). On December 20, 1990, the Supreme

Court of Pennsylvania denied the petitioner's request for allowance of appeal. Commonwealth v.

Jones, 588 A.2d 913 (Pa. 1990).

On January 9, 1997, petitioner filed a *pro se* petition seeking state collateral relief pursuant

to the Post Conviction Relief Act ("PCRA"). The PCRA court appointed counsel, who subsequently

filed an amended petition on behalf of the petitioner. Despite petitioner's request for an evidentiary

hearing, the PCRA court determined that none was needed and proceeded to make a decision on the

existing record. On March 28, 2001, the PCRA court dismissed the petition and petitioner filed a

*pro se* appeal. Following the issuance of a written decision by the PCRA court, the Superior Court

affirmed the ruling on August 21, 2002. Commonwealth v. Jones, 809 A.2d 958 (Pa. Super. 2002).

Petitioner did not seek allowance of appeal from the Pennsylvania Supreme Court.

On December 30, 2002, petitioner filed the instant Petition for Writ of Habeas Corpus

alleging the following:

1.   Trial counsel was ineffective for failing to object to the trial court's omission of the two elements of criminal attempt;

2.   Trial court abused its discretion when it refused to define the charged offense of criminal attempt to the jury;

3.   Trial court lacked subject matter jurisdiction because the crime of criminal attempt was not included in the criminal information;

4.   Trial counsel was ineffective for waiving petitioner's presence at his suppression hearing without authorization;

5.   The court denied petitioner his rights of due process, to a fair trial, and to confront and to cross-examine witnesses by conducting the pretrial suppression hearing in his absence;

6.   Appellate counsel was ineffective and committed a miscarriage of justice by informing the Superior Court that petitioner was present at the suppression hearing;

7.    Trial counsel was ineffective for objecting to, but failing to preserve for appellate review:  1) the suggestiveness of an out of court identification procedure of two Commonwealth witnesses and 2) the lack of an independent basis for the in-court identifications;

8.    Trial counsel was ineffective for: 1) failing to raise prosecutorial misconduct for the prosecution's failure to correct the false testimony by police officer Michael Dougherty and 2) failing to object to such false testimony which was inadmissible, thereby denying petitioner a fair trial and due process;

9.    Trial counsel was ineffective for failing to preserve the issue of prosecutorial misconduct when the prosecution misstated its key witness's testimony and vouched for the credibility of another witness who had a criminal record during closing arguments;

10.    The Commonwealth committed misconduct and violated the discovery rules, denying petitioner a fair trial, by only giving the petitioner two days notice that a certain Commonwealth witness would be called; it was later found that this witness had a criminal record;

11.    Trial counsel was ineffective for failing to impeach this Commonwealth witness using her prior *crimen falsi*;

12.    Trial counsel was ineffective when he failed to locate and to call an alibi witness;

13.    The Commonwealth committed misconduct and denied petitioner the right to due process when it violated <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963) and <u>United States v. Bagley</u>, 473 U.S. 667, 105 S. Ct. 3375 (1985);

14.    Trial counsel was ineffective for denying the petitioner his Fifth Amendment right to testify on his own behalf;

15.    Trial counsel was ineffective for failing to raise or to preserve the issue of the Commonwealth's failure to meet its burden of showing that the identifications made at the suppression hearing were not obtained in violation of petitioner's due process rights;

16.    Trial counsel was ineffective for failing to preserve the claim that the prosecutor committed misconduct by  eliciting false testimony from two witnesses;

17.    Appellate counsel was ineffective for failing to raise all instances of ineffective assistance of trial counsel on direct appeal;

18.    The post conviction court was in error when it denied petitioner's post conviction

petition without an evidentiary hearing thus denying petitioner due process.

On July 23, 2003, the undersigned issued a Report and Recommendation finding that claim nos. 2, 3, 8, 9, 15 and 16 were procedurally defaulted, and that the remaining claims were meritless.  Jones v. Kyler, Civ. A. No. 02-9510, 2003 WL 22331773, *4 (E.D. Pa. July 23, 2003).  This Report was approved and adopted by the Honorable Franklin S. Van Antwerpen via two orders dated August 15, 2003 and October 23, 2003.

Petitioner filed a timely appeal to the United States Court of Appeals for the Third Circuit which, on August 17, 2004, granted the request for a certificate of appealability, vacated the District Court's orders and remanded the matter to this Court.  The Third Circuit further instructed that this Court was to obtain the state court record in petitioner's criminal case and reconsider our findings as to exhaustion and procedural default and, as appropriate, the merits of petitioner's claims.  It is to this task that we now turn our attention.

II.    STANDARD OF REVIEW

Under the current version of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> An application for a writ of habeas corpus on behalf of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless that adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Supreme Court interpreted this statute and more clearly defined the two-

part standard of review in <u>Williams v. Taylor</u>, 529 U.S. 362, 404-405, 120 S. Ct. 1495 (2000). Under the first prong of the review, a state court decision is "contrary to" the "clearly established federal law, determined by the Supreme Court of the United States," (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that reached by [the Supreme Court]." <u>Id</u>. at 405. Pursuant to the second prong, a state court decision can involve an unreasonable application of Supreme Court precedent: (1) "if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context should apply." <u>Id</u>. at 407-408.  Under this clause, however, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly-established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 410.

III.   DISCUSSION

In the initial Report and Recommendation, the Court indicated that six of petitioner's claims were procedurally defaulted.  <u>Jones</u>, 2003 WL 22331773, at *4.  The procedural default barrier precludes federal courts from reviewing a state petitioner's habeas claims if the state court decision is based on a violation of state procedural law that is independent of the federal question and adequate to support the judgment.  <u>Coleman v. Thompson</u>, 501 U.S. 722, 729, 111 S. Ct. 2546, 2553 (1991).  "In the context of direct review of a state court judgment, the independent and adequate

state ground doctrine is jurisdictional. . . [b]ecause this Court has no power to review a state law determination that is sufficient to support the judgment." Id.  Thus, we declined to consider the six defaulted claims on their merits

As noted above, the Third Circuit remanded this case with direction to revisit our findings of procedural default.  With that mandate in mind, we turn to each issue individually.

A.     Trial Court Error for Failing Failed to Define the Charged Offense of Attempt (Claim 2)

_____Petitioner's first defaulted claim alleges that the trial court abused its discretion when it refused to define the charged offense of criminal attempt to the jury.  The original Report and Recommendation in this matter deemed the claim procedurally defaulted due to our finding that petitioner raised only the corollary claim of the ineffective assistance of counsel for failure to charge the jury on all elements of attempt, rather than the habeas claim of trial court error.  This determination was based, in substantial part, on the opinion of the Pennsylvania Superior Court, which addressed only the ineffectiveness claim[2].  Nonetheless, upon closer reading of petitioner's amended PCRA petition and memorandum in support, together with his brief on appeal to the Pennsylvania Superior Court, we acknowledge that our conclusion was indeed mistaken.  As a result of our revised findings, we reverse the finding of procedural default and proceed to consider this claim on its merits.

In the case at bar, the District Attorney requested that the trial court define the general charge

---

[2]  Notably, the state court found the ineffectiveness claim to be previously litigated, deeming it to be "merely an attempt to relitigate petitioner's appellate issue of insufficiency of evidence to support the conviction for attempted involuntary deviate sexual intercourse."  PCRA Opinion (2001), at 14.  We found previously, that the state court improperly characterized this claim, since, on direct appeal, petitioner only alleged insufficiency of the evidence – a very different animal than a Sixth Amendment ineffective assistance of counsel for failure to object to jury instructions claim.  Accordingly, we addressed that claim on its merits.

on criminal attempt.  The following exchange occurred:

> MS. PONTERIO: Then, your Honor, I just wanted to see, you're going to give the general charge on criminal attempt, the one, because it was attempted involuntary deviate sexual intercourse.
>
> THE COURT: Yes, wait.  What are you talking about, the general charge?
>
> MS. PONTERIO: Well, they have what the general charge is on general attempt.  It's attempt on involuntary deviate sexual intercourse.  So you have to explain what the word attempt is.
>
> THE COURT: Well, everybody knows what that means.  I am going to cover it as attempted.
>
> MS. PONTERIO: Right.  But this defines what attempt and this defines the charge – this is the involuntary deviate sexual intercourse charge and this is the attempt, explains what an attempt is.
>
> THE COURT: I don't think I have to do that.

(N.T. 6/6/88, pp. 6-7).  At no point did defense counsel make a similar request.  Thereafter, the trial

judge defined the charged offense of attempted involuntary deviate sexual intercourse as follows:

> In order to find the defendant guilty of attempted involuntary deviate sexual intercourse, you must be satisfied that the following two elements have been proven beyond a reasonable doubt:
>
> First, that the defendant attempted to engage in devious [sic] sexual intercourse with Cora Haas.
>
> And second, that the defendant attempted to engage in the intercourse by forcible compulsion.
>
> Attempted deviate sexual intercourse is defined as attempted sexual intercourse by mouth between persons who are not husband and wife.  Some penetration is required to be attempted, but it may be slight penetration.  An emission is not required.
>
> As I just told you, the defendant must attempt the intercourse by forcible compulsion.  Put differently, the alleged victim must be unwilling and the defendant must attempt to compel the intercourse.  The defendant must attempt to have the intercourse without the consent of the victim and the defendant must employ force that is sufficient in the particular circumstances to attempt to induce the alleged victim to

submit without further resistance, and to establish that she has not consented.

You will note there is no specific requirement in the definition of attempted involuntary deviate sexual intercourse that the defendant employ or threaten force likely to cause serious bodily injury, or that the alleged victim struggle or otherwise resist.

However, the kind and amount of force involved and the strength of the alleged victim's resistance are important factors that should be considered by the jury along with all other relevant factors and circumstances in determining whether there was sufficient force or threat of force and whether there was attempted intercourse without the consent of the victim.

(N.T. 6/6/88, pp. 70-71). No objection to this instruction was made at trial. During the subsequent PCRA proceedings, however, petitioner challenged the trial court's refusal to offer a separate definition of "criminal attempt." By way of a cursory footnote, the PCRA court opined that the charge "clearly, adequately and accurately" presented the law. PCRA Opinion (2001), p. 14. Petitioner now contends that the omission of this jury instruction violated his due process rights and deprived him of a fair trial.

This Court finds that the state court's conclusion, while abbreviated, is neither contrary to nor an unreasonable application of federal law. Jury instructions given during a state trial fall within the province of the state and, thus, instructional errors generally may not form the basis for federal habeas relief." Gilmore v. Taylor, 508 U.S. 333, 344, 113 S. Ct. 2112, 2119 (1993). "[B]efore a federal court may overturn a conviction . . . it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973); United States ex rel. Harding v. Marks, 541 F.2d 402, 405 (3d Cir. 1976).

"A single instruction to the jury may not be judged in artificial isolation, but must be viewed in context of the overall charge." Cupp, 414 U.S. at 146-47. In addition, although an individual

instruction may be sufficient to violate the mandates of due process, this Court must also recognize that a single jury instruction is but one of several components of a trial that may lead to a conviction. See Cupp, 414 U.S. at 147. Thus, review of this jury instruction is based upon the "harmless error" standard, which prescribes that an infirmity warrants reversal only when it had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1722 (1993); Buehl v. Vaughn, 166 F.3d 163, 177 (3d Cir. 1999).

In this case, the trial judge gave a lengthy definition of "attempted involuntary deviate sexual intercourse" without separately defining what constitutes an "attempt." Under Pennsylvania law, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901. "The plainer the intent to commit the offense, the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement." Commonwealth v. Jacob, 867 A.2d 614, 618 (Pa. Super. 2005) (internal quotations omitted) (discussing sufficiency of evidence for charge of intent to commit involuntary deviate sexual intercourse).

Such key principles were adequately conveyed in the charge at issue. Although the trial court did not use the actual words "substantial step" or "intent to commit the crime," the clear import of the jury instruction informed the jury that it must find that petitioner intended to engage in some type of forcible sex with the victim and demonstrated some type of overt act in furtherance of that crime.

Moreover, even if this Court were to find that the jury instruction was faulty, petitioner stands hard-pressed to argue that it had a "substantial and injurious effect or influence in determining the jury's verdict." The victim testified that during the rape, petitioner removed his

9

penis from her vagina and "went to put his penis into her mouth and I had closed my eyes and turned my head and I said no.  I didn't want to do that.  So then he had put his penis back in my vagina." (N.T. 6/1/88, p. 51).  Her testimony, combined with the testimony of the various Commonwealth witnesses who observed both the actual crime and the presence of petitioner at the scene certainly suffice to establish that petitioner, with the required intent, made a substantial step towards committing involuntary deviate sexual intercourse with the victim.  Simple logic, then, leads this Court to conclude that even had the trial judge included a more specific instruction on the crime of attempt, the jury's verdict would not have been different.

> B.    Whether Trial Court Lacked Subject Matter Jurisdiction Because the Crime of Criminal Attempt Was Not Included in the Criminal Information  (Claim 3)

In Claim 3 of his habeas petition, petitioner asserts that the trial court lacked subject matter jurisdiction because the crime of criminal attempt was not included in the criminal information.  As support for his claim, he makes the somewhat unclear argument that "when the trial judge instructed the jury on information No. 27, the Judge used the general term of attempt but this was not the statutory definition of this crime as defined at 18 Pa. Con. Stat. Ann. § 901(a)."  See Petition for Writ of Habeas Corpus at 10.

Upon close review of the pleadings filed in state court, this Court finds no evidence that petitioner ever presented this claim previously.  Pursuant to the exhaustion requirement, before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his available remedies in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999). In other words, a petitioner must invoke "one complete round of the State's established review process" before he may assert the claim on federal habeas review.  Id. at 845.  "If [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his

10

claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . .," the claims are procedurally defaulted for federal habeas purposes <u>Coleman</u>, 501 U.S. at 735 n.1; <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999).

Petitioner's time period for filing a new PCRA petition has long since passed.  As he failed to raise this claim to the state courts previously and cannot do so now, we renew our finding that this claim is procedurally defaulted.

C.      Trial Counsel Ineffectiveness for Failing to Object to False Testimony by Officer
        Michael Dougherty (Claim 8)

Petitioner's habeas claim number 8 alleges that trial counsel was ineffective for:  (1) failing to raise prosecutorial misconduct when the prosecutor did not correct the false testimony by police officer Michael Dougherty and (2) failing to object to such false testimony which was inadmissible, thereby denying petitioner a fair trial and due process.  In support of this claim, he cites to various portions of Officer Dougherty's testimony, which, he contends, conflict with both the complaining witness's testimony and his police reports.

In his PCRA petition, petitioner raised the identical claim.  Nonetheless, neither his original nor his amended PCRA petition identified any specific portion of the testimony or described the substance of the challenged testimony.  When confronted with a motion to dismiss his PCRA petition, petitioner merely listed eighteen pages from Cora Haas's and Officer Dougherty's testimony without specifying where the alleged falsity occurred.  Ultimately, the PCRA court held that, "[p]etitioner did not however identify which testimony presented by the Officer was false.  Accordingly, Petitioner's abstract allegations, presented in a vacuum, neither afford a basis for the grant of an evidentiary hearing nor for post conviction relief."  PCRA Court Opinion (2001), at p. 17.  Although petitioner's brief to the Pennsylvania Superior Court thereafter defined precisely

11

which testimony he believed to be perjured, the Superior Court declined to reverse the trial court's decision.  <u>See</u> Brief at 29.

As we previously noted, "petitioner's state court pleadings and briefs must demonstrate that he has presented the legal theory *and supporting facts* in such a manner that the claims raised in the state courts are 'substantially equivalent' to those asserted in federal court."  <u>Doctor v. Walters</u>, 96 F.3d 675, 678 (3d Cir. 1996) (emphasis added); <u>see</u> <u>also</u> <u>Jones v. Frank</u>, 28 F. Supp.2d 956, 961 (E.D. Pa. 1998) ("Fair presentation consists of both legal theory and supporting facts.").  In this case, petitioner failed to present any supporting facts to the PCRA court.  Since the burden fell on petitioner to, at minimum, set forth the basis for his claim, this Court cannot find fault with the state courts' refusal to comb the record in search of evidentiary support.  While petitioner now offers those facts for this Court's review, we cannot now consider them where the state courts were not given the same opportunity.  Accordingly, we reaffirm our finding of procedural default.

Even were the Court to find the claim properly presented, however, it fails to support a grant of habeas relief.  Petitioner argues that Officer Dougherty testified, on direct examination, that the victim informed him that petitioner had a scar on his head.  (N.T. 6/2/88, 54-55).  The victim, on the other hand, testified that Officer Dougherty never asked her about a scar on her attacker's forehead and that the first person she mentioned it to was Officer Tufo.  (N.T. 6/1/88, pp. 55-56, 75, 91-92).  Moreover, Officer Dougherty conceded that although he recalled the victim telling him about the scar, that fact was not on his police report.  (N.T. 6/2/88, pp. 60-62).  Petitioner thereby claims that counsel was ineffective for failing to raise prosecutorial misconduct in eliciting this testimony and for failing to object to such false testimony.

Such allegations simply do not set forth a constitutional violation.  " '[A] conviction obtained

by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " Kyles v. Whitley, 514 U.S. 419, 433 n. 7, 115 S. Ct. 1555 (1995) (quoting United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976)).  "The same is true when the government, although not soliciting false evidence, allows it to go uncorrected when it appears at trial." United States v. Biberfeld, 957 F.2d 98, 102 (3d Cir.1992) (citing Giglio v. United States, 405 U.S. 150, 153, 92 S. Ct. 763, 766 (1972) (quoting Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177 (1959))). However, "mere inconsistencies in testimony fall short of establishing perjury and most certainly do not establish that the government knowingly utilized perjured testimony." United States v. Thompson, 117 F.3d 1033, 1035 (7th Cir. 1997) (citation and internal quotation marks omitted).  As recognized by the Third Circuit, "[t]here are many reasons testimony may be inconsistent; perjury is only one possible reason." Lambert v. Blackwell, 387 F.3d 210, 249 (3d Cir. 2004).  Thus, in order to sustain a claim of constitutional error, the petitioner must show that the witness actually perjured himself and the government knew or should have known of his perjury. Id.  Once a petitioner satisfies this burden, he must establish that "the false testimony could have affected the judgment of the jury." United States v. Agurs, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397 (1976).

Even assuming the testimony can be deemed to conflict, nothing in the record reveals that Officer Dougherty's testimony was perjured.  The officer indicated that the victim reported that her attacker had a scar.  Although the victim affirmatively remembered her attacker having a scar, she did not recall telling that fact to Officer Dougherty, who was the first officer on the scene.  This relatively minor inconsistency was subject to lengthy cross-examination by defense counsel, who extensively questioned Officer Dougherty as to why the description of the scar, if actually given to

13

him by the victim, was not included in his preliminary report.  (N.T. 6/2/88, pp. 62-67).  Officer

Dougherty thereafter made reasonable and plausible efforts to explain his testimony.  Ultimately,

as there were no other facts to establish the correct version of events, the conflicting testimony was

subject to a credibility determination by the jury.  "Determining the weight and credibility of witness

testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who

are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and

the ways of men.'" United States v. Scheffer, 523 U.S. 303, 313, 118 S. Ct. 1261, 1266-1267 (1998)

(quoting Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88, 11 S. Ct. 720, 724-725 (1891)).  As "it is

improper for a district court to substitute its judgment of the facts and the credibility of the witnesses

for that of the jury," the jury's weighing of the officer's testimony stands immune from this Court's

own speculation as to its truth or falsity.  United States v. Haut, 107 F.3d 213, 220 (3d Cir. 1997)

(internal quotations omitted).[3]

---

[3]  Notably, the trial judge further minimized the possible impact of any "false" testimony by instructing the jury as follows:

> If you find there were conflicts in the testimony, you, the jury, have the duty of deciding which testimony to believe, if any.  But you should first try to reconcile, that is fit together any conflicts in the testimony which you find if you can do so fairly.

> Discrepancies and conflicts between the testimony of different witnesses may or may not cause you to disbelieve some or all of their testimony.

> Remember that two or more persons witnessing the same incident may see it or hear it differently.

> Also, it's not uncommon for a witness to be innocently mistaken in his or her recollection of how something happened.

> If you cannot reconcile a particular conflict in the testimony, it's up to you to decide which testimony, if any, to believe and which to reject as untrue or inaccurate.

> In making this decision, consider whether the conflict involves a matter of importance to your decision or merely some unimportant detail, and whether the conflict is brought about by an innocent mistake or by an intentional falsehood.  You should also bear in mind the other facts which I've already discussed with you which are to be considered in deciding whether or not to believe a particular witness.

14

In the same vein, we decline to find that trial counsel was ineffective for failing to object to this testimony or raise a claim of prosecutorial misconduct. In the case of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court set forth a two-prong test by which claims alleging counsel's ineffectiveness are reviewed. <u>Id</u>. at 687. First, the petitioner must demonstrate that his trial counsel's performance fell below an "objective standard of reasonableness." <u>Id</u>. at 688. It is well-established that counsel cannot be ineffective for failing to raise a meritless claim. <u>Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir. 2000); <u>Holland v. Horn</u>, 150 F. Supp.2d 706, 731 (E.D. Pa. 2001). Pursuant to the second prong, the defendant must establish that the deficient performance prejudiced the defense. <u>Strickland</u> 466 U.S. at 694.

Counsel had no basis for making any objection with regard to Officer Dougherty's testimony. Rather, he appropriately relied on the well-established truth-telling vehicle of cross-examination to highlight what he perceived to be an inconsistency between two Commonwealth witnesses. Having done a thorough job in this regard, the Court cannot find that his actions fell below an objective standard of reasonableness.

D.     Trial Counsel Ineffectiveness for Failing to Preserve the Issue of Prosecutorial

---

In deciding which of any conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side. You should consider whether the witnesses appeared to be biased or unbiased, whether they are interested or disinterested persons, and consider all other factors which go to the reliability of their testimony.

The important thing is the quality of the testimony of each witness. You may find that the testimony of a few witnesses, even of just one witness, is more believable than the opposing testimony of a great number of other witnesses.

On the other hand, you should also consider the extent to which conflicting testimony, if any, is supported by other testimony. The question for you to decide based on all the considerations I'm now discussing with you is not which side produced the most evidence, but, instead, which evidence you believe.

(N.T. 6/6/88, pp. 60-62).

Misconduct When (a) the Prosecution Misstated Its Key Witness's Testimony and (b) Vouched for the Credibility of Another Witness Who Had a Criminal Record (Claim 9)

Petitioner's next claim at issue poses a two prong error.  First, he contends that, during closing arguments, the prosecution erroneously told the jury that the victim testified that she had seen her attacker before the night of the crime.  Petitioner argues that the victim had never testified to this effect, making the prosecution's statement incorrect and, in turn, his counsel ineffective for failing to object.  Second, he claims that the prosecution improperly vouched for the credibility of its witness, Joanne Dutton, even though she had a prior criminal record of *crimen falsi* crimes.  In our original Report and Recommendation, the Court found this claim to be procedurally defaulted.

With respect to the first portion of this allegation, we reaffirm our previous holding.  On PCRA appeal, petitioner did indeed allege that trial counsel failed to object when the Commonwealth misstated its key witness's testimony.  In doing so, however, he neglected to specify which "key witness" he was referring to – a crucial omission in light of the fact that several witnesses were "key" to the Commonwealth's case.  Moreover, even assuming that the state courts should have known the precise witness petitioner was identifying, he completely neglected to indicate to the state courts either the portion of her testimony which he believed to be misstated or the offensive portion of the prosecutor's closing.  As her testimony and the prosecutor's closing spanned multiple pages, the state court was not required to comb the record to discern the portion about which petitioner was concerned.  Indeed, the state courts never addressed this claim since it had no basis on which to do so.  In his current habeas petition, petitioner now cites to the precise portions of the testimony and the prosecution's closing which he claims conflict.  Having neglected to offer the same insight to the state court, petitioner is now hard-pressed to argue that this allegation

was fairly presented at the PCRA level.  Absent such "fair presentation," this Court must find the claim procedurally defaulted.  Doctor, 96 F.3d at 678.[4]

The second portion of petitioner's Claim 9, however, poses a different scenario.  As noted above, petitioner alleges that trial counsel was ineffective for failing to object when the prosecution vouched for the credibility of its witness Joanne Dutton.   In our previous Report and Recommendation, we found that although petitioner raised this claim as prosecutorial misconduct in the state court, he added a layer of ineffective assistance of counsel in his habeas petition, thus turning it into an unexhausted Sixth Amendment claim.  This Court has re-reviewed the pleadings from the various state court proceedings and, upon further consideration, now recognizes that, although the state court only considered the claim of prosecutorial misconduct, petitioner did, in fact, raise the Sixth Amendment aspect as well.  As such, we vacate our finding of procedural default

---

[4] In any event, the Court does not find that this claim affords any basis for granting habeas relief.  At closing, the prosecutor argued as follows:

But, you see, Ladies and Gentlemen of the Jury, this is not a case of identification.  This is a case of recognition.  And Miss Haas told you in the courtroom just a few days ago, "I had seen him before.  I didn't know his name, but I had seen him before."

(N.T. 6/6/88, p. 40).  This argument reflected the import of Ms. Haas's testimony, wherein the following exchange occurred:

Q.     Miss Haas, on the day this occurred, had you ever met James Jones?

A.     No.

Q.     You never saw him before?

A.     No.  He looked familiar, but I never –

Q.     You never spoke to him?

A.     Right.

(N.T. 6/1/88, p. 65).  While defense counsel may have been able to offer a different interpretation of Ms. Haas's testimony, the prosecutor's closing did not misstate her testimony.  Accordingly, counsel's failure to object did not result in a viable Sixth Amendment claim.

17

on this claims and proceed to address it on its merits.

On review of the prosecutorial misconduct portion of this claim, the PCRA court remarked that when a prosecutor's remarks during closing argument concerning the credibility of a witness are motivated by and in response to prior attacks upon the witness's credibility, the remarks do not constitute error. Its own "thorough review" of the trial record indicated that the district attorney was not vouching for, but was merely responding to a defense attack of the prosecution and its witness. PCRA Court Opinion (2001), p. 18.

Considering both the record before us and the pertinent jurisprudence, this Court must agree. "Vouching constitutes an assurance by the prosecuting attorney of the credibility of a Government witness through personal knowledge or by other information outside of the testimony before the jury." United States v. Walker, 155 F.3d 180, 184 (3d Cir. 1998) (citing United States v. Lawn, 355 U.S. 339, 359 n. 15, 78 S. Ct. 311, 323 n. 15 (1958)). Such a practice raises various due process concerns with respect to its impact on the jury. Id. (citing United States v. Young, 470 U.S. 1, 18, 105 S. Ct. 1038, 1048 (1985); United States v. Molina-Guevara, 96 F.3d 698, 704 (3d Cir. 1996)). For a finding of vouching to be made, two criteria must be met: "(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance is based on either the prosecutor's personal knowledge, or other information not contained in the record." Walker, 155 F.3d at 187. A "prosecutor is engaging in proper argument and is not vouching" when he argues that "a witness is being truthful based on the testimony given at trial, and does not assure the jury [of] the credibility of the witness based on his own personal knowledge[.]" Id.

While vouching is impermissible, federal law prescribes that a prosecutor's remarks not be viewed independently, but as a response to previous statements made by defense counsel. Darden

18

v. Wainwright, 477 U.S. 168, 179, 106 S. Ct. 2464, 2470 (1986).  Accordingly, "if the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction." U.S. v. Young, 470 U.S. 1, 12-13, 105 S. Ct. 1038, 1045 (1985).  This "invited response" or reply doctrine permits a prosecutor to neutralize improper defense arguments.  United States v. DiPasquale, 740 F.2d 1282, 1296 (3d Cir. 1984).

During closing in the case before us, defense counsel made the following argument about Joanne Dutton:

> Remember the surprise witness, Joanne Dutton?  She is practically an alibi witness. She saw him at the same time the other two saw him by the bridge, she saw him over here.  She knew his nickname, Bunk.  The very same time when she hears screaming, she said.  Maybe it was before.  The only screaming in the case was when the man was dragging her up the path.
>
> She was practically an alibi witness for my client.  She is also a neighbor, and she also wants to be sympathetic to this young lady, and she didn't see the incident either.  She said she saw him over here at the same time that the other witnesses saw him over there.  He is in two places, perhaps three place [sic] at once.

(N.T. 6/6/88, pp. 26-27).  In response, the prosecution stated as follows:

> . . . [A]nd defense counsels said, "Well she is an alibi witness." . . .There is no explanation for Joanne Dutton.  How do they explain Joann Dutton?  She doesn't fit in with Lisa Hooper and Mataz Hall.  How do they explain her?  They can't explain her, Ladies and Gentlemen of the Jury.  They can't explain her.

(N.T. 6/688, pp. 48).

Such a response far from constitutes vouching.  As a primary matter, the prosecution did not assure the jury of the truthfulness of Ms. Dutton based on her personal knowledge or other information not contained in the record.  Rather, she did nothing more than indicate that the defense

put forth no evidence to undermine her testimony.  Moreover, the prosecutor's argument, as found

by the state court, constituted a fair response to the defense's attack on Ms. Dutton as a reliable

witness who placed petitioner near the scene of the crime.  In short, petitioner's allegation of

vouching is meritless.

By the same token, the Court finds no merit to petitioner's allegation of ineffective assistance

of counsel for failing to challenge the admission of these identifications.  As noted above,

petitioner's claim that the prosecution engaged in impermissible vouching is meritless.  Since

counsel cannot be ineffective for failing to raise or preserve such a meritless claim, we must deny

this portion of the habeas petition.

> E.     Trial Counsel Ineffectiveness for Failing to Raise or Preserve Issue of the
> Commonwealth Failing to Meet Its Burden that the Evidence Was Not Obtained in
> Violation of Petitioner's Due Process Rights Based on the Identification at the
> Suppression Hearing (Claim 15)

Claim 15 of petitioner's habeas petition alleges that his trial counsel was ineffective for

failing to raise or preserve the issue of the suggestiveness of the photo identification.  Specifically,

in his pre-trial motion to suppress, petitioner argued that the identifications by the various

Commonwealth witnesses were tainted by the fact that one eyewitness pointed out petitioner's house

to two other eyewitnesses as the residence of the person who committed the crime.  At the

suppression hearing, the police officer who conducted the photo array testified as to the validity of

the subsequent photo array and stated that four Commonwealth witnesses independently identified

the petitioner from the photos provided.  Counsel argued that the Commonwealth failed to meet its

burden of proving the reliability of the identification procedure, since it offered only the testimony

of the police officer without presenting the actual eyewitnesses.  Petitioner now contends that

counsel neglected to preserve the issue of the unreliability of the photo array and that the identifications were not adequately challenged because petitioner was not present at this hearing to confront or cross-examine the witnesses.

In the original Report and Recommendation, this Court found the claim procedurally defaulted under the mistaken belief that petitioner had only raised this claim in the state court as trial court error, without the added layer of ineffective assistance of counsel. Again, we have carefully reviewed the state court pleadings and discovered that, although the state court did not address it as such, petitioner did indeed allege trial counsel ineffectiveness for failure to raise the issue of the Commonwealth's failure to meet its burden at the suppression hearing. Thus, we again vacate the finding of procedural default and proceed to hear the claim on its merits.

Nonetheless, we decline to find that this claim warrants any habeas relief. The prior Report and Recommendation thoroughly addressed two variants of this precise claim. First, we considered whether counsel was ineffective for waiving petitioner's presence at the suppression hearing and concluded that, "[a]s petitioner was not present at the photo array, he had no additional information to offer the court about its prejudicial nature beyond that presented by his counsel." Jones, 2003 WL 22331773, *8. Second, we considered whether counsel was ineffective in his challenge to the photo array and they in-court identifications. This Court determined that the photo array was not suggestive and, thus, did not improperly taint the in-court identifications of the witnesses. Id. at *9. To the extent that one witness may have influenced the others in their identification, we found that the witnesses' credibility was available to be tested through cross-examination, but that the array procedure itself was not unreliable. Id.

Adopting the legal discussion from our prior Report and Recommendation in full,

21

petitioner's habeas claim has little merit.  Although the Commonwealth only offered the testimony of one police officer in order to establish the reliability of the identification procedure, his testimony was more than sufficient to meet the Commonwealth's burden.  As we found previously, the only suggestiveness occurred, not at the hands of the police conducted photo array, but by one witness influencing another.  Petitioner's presence at the hearing would not have altered the outcome since petitioner had no additional insight to offer.  As these claims are meritless, counsel cannot be ineffective for acting as he did at the suppression hearing.

> F.     Trial Counsel Ineffectiveness for Failing to Preserve the Issue of Prosecutorial <u>Misconduct for Eliciting False Testimony from Two of Its Eye Witnesses (Claim 16)</u>

The last of the habeas claims at issue asserts that two of the Commonwealth's witnesses made in-court identifications of petitioner, over objections by counsel, and testified to something which was not in their statements.  He goes on to argue that although the in-court identifications of the Commonwealth witnesses conflicted with their own statements given to police at the time of the crime, counsel failed to preserve this issue on appeal.

Yet again, this Court previously deemed the issue procedurally defaulted, finding that it had never been raised previously.  On appeal from the denial of his PCRA petition, however, petitioner did, in fact, argue the self-same issue.  Accordingly, we now reach its merits.

Petitioner cites to two "discrepancies" between the witnesses' testimony and their police statements in support of his allegation that the prosecutor elicited false testimony from them.  First, he asserts that Commonwealth witnesses Mataz Hall and Lisa Hooper both testified at trial that petitioner was the person they saw at the scene of the crime.  (N.T. 6/1/88, p. 104, 106, 135-136).  Officer Edward Tufo, however, testified that, at the time he took their statements, neither of them

indicated to him that they knew who the perpetrator was.  (N.T. 6/3/88, p. 43).  The second alleged discrepancy concerns testimony by both Ms. Hall and Ms. Hooper that the man they witnessed was wearing a tan, three-quarter length jacket.  (N.T. 6/1/88, p. 107, 136).  Such information, however, was not in their original police statements.  Petitioner now argues that counsel could have had no reasonable basis to preserve the issue of prosecutorial misconduct for presenting false testimony.

This claim fails on multiple grounds.  Primarily, the PCRA Court found that the identification testimony of Ms. Hall and Ms. Hooper was "entirely credible" – a finding of fact to which this Court must defer under 28 U.S.C. § 2254(e)(1).  PCRA Opinion (2001) at p. 17.  Petitioner now presents no clear and convincing evidence to challenge this finding.  With respect to the first alleged inconsistency, Officer Tufo merely testified that the two witnesses did not identify petitioner during their original police statements, but picked him out of a photo array the following day.  (N.T. 6/3/88, p. 31-32).  Further, both Ms. Hall and Ms. Hooper indicated that they saw the side of his face on the night of the crime and then ran into the same person face-to-face the following day, thereby justifying their identifications.  (N.T. 6/1/88, p. 104-106,113, 135-137).  As to the second inconsistency, the mere fact that a portion of their description did not appear in the police reports did not necessarily contradict their testimony at trial.  Indeed, Ms. Hooper indicated that she mentioned the tan, three-quarter length coat and Officer Tufo indicated that both witnesses mentioned some sort of jacket, be it tan or gray.  (N.T. 6/1/88, p. 143, 6/3/88, pp. 24, 42)).

Moreover, even assuming that such testimony could be deemed inconsistent, petitioner is hard-pressed to argue that prosecutor either intentionally elicited false testimony or failed to correct testimony she knew to be false.  As noted above, mere inconsistencies in testimony, standing alone, do not establish a prosecutor's knowing use of perjured testimony.  Thompson, 117 F.3d at 1035.

23

Petitioner must prove that the witness actually perjured himself and the government knew or should have known about the perjury.  Agurs, 427 U.S. at 103.  Nothing in the record before us, however, would have alerted the prosecution to the existence of such falsity.

Finally, petitioner fails to establish any prejudice.  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  Smith v. Phillips, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982).  A petitioner seeking the writ of habeas corpus will not succeed merely because the prosecutors' actions "were undesirable or even universally condemned."  Darden, 477 U.S. at 181 (quotations omitted).  Rather, to state a claim for habeas relief, a petitioner must show that the prosecutor's comments were so egregious that they fatally infected the proceedings, rendered the entire trial fundamentally unfair, and made the conviction a denial of due process.  Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 1871 (1974)).  Where such an error occurs, the inquiry then becomes whether, in light of the record as a whole, the prosecutor's conduct "had substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abramson, 507 U.S. 619, 638, 113 S. Ct. 1710, 1722 (1993) (quotations omitted).

The fact remains that petitioner matched the description given by the victim, was identified in a photo array by the victim, was identified in a photo array by two eyewitnesses to the crime and was placed at the scene of the crime by Commonwealth witnesses Joanne Dutton and Mark Woods.  Minor discrepancies between the police statements and trial testimony far from overcome the substantial, even overwhelming evidence against petitioner.  Accordingly, even had trial counsel sought to have these "inconsistencies" corrected by the prosecution, petitioner simply cannot prove that the jury's verdict would have been altered in any fashion.  We, thus, deny this claim.

IV.     CONCLUSION

While several of petitioner's habeas claims remain procedurally defaulted, this Court concedes, in light of a more scrutinizing review of the state court pleadings, that some of the claims we previously found defaulted are available for consideration on the merits.  Nonetheless, such arguments by petitioner fail to set forth any grounds for habeas relief.  Therefore, we recommend that the entire habeas petition be denied.


<u>RECOMMENDATION</u>

AND NOW, this 3rd day of *August*, 2005, IT IS RESPECTFULLY RECOMMENDED that the Petition for Writ of Habeas Corpus be DENIED.  There is no probable cause to issue a certificate of appealability.


_____
CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

PCRA

1.    Trial judge failed to instruct on lesser included offense of attempted involuntary deviate sexual intercourse

2.    Trial counsel failed to request a renunciation defense since actual crime had never taken place and defendant met all elements of renunciation defense, in that he abandoned the crime voluntarily

3.    Trial judge failed to instruct jury on renunciation defense, violation due process and equal protection

4.    Constitutional right to speedy trial was violated and defendant was prejudiced since defense witnesses had moved and could not be located - they were alibi defenses

5.    Trial attorney failed to request missing witness instruction since the entire defense rested with the alibi witness and counsel failed to subpoena said witnesses

6.    Appellate counsel should have raised trial counsel's ineffectiveness in failing to procure alleged alibi witness

7.    Trial counsel failed to go over pre-sentence evaluation form, in which there exists incorrect information

8.    Trial counsel was ineffective for presenting petitioner's prior crime before the jury

9.    Commonwealth prejudiced defendant by bringing petitioner's prior crime to the jury's attention, when petitioner had never taken the stand

10.   Counsel induced him not to take the stand, when petitioner wanted to take the stand to refute the Commonwealth witnesses and present his alibi since the alibi witness could not be located

11.   Trial counsel failed to request that a lesser included offense of attempted involuntary deviate sexual intercourse instruction be given

26

12.   Trial judge failed to instruct jury on the three elements of attempted involuntary deviate sexual intercourse - only instructed on two of the elements

13.   Trial counsel failed to object to court's refusal to charge jury on attempted involuntary deviate sexual intercourse, thus jury must be appraised of all elements of each charge or crime, even an attempt has its elements which the trial judge failed to instruct on, after a request from the district attorney to instruct, yet counsel for defendant remained objectionless, petitioner avers the court should have so charge on attempt independently

Amended PCRA

1.   Petitioner was deprived of right to be at a proceeding which was critical, of which extracted testimony from officers, whereas the complainant was not present to corroborate such testimony,, thus the petitioner's testimony at this stage could have demonstrated otherwise, as petitioner would have taken the stand to rebut such testimony

2.   Trial counsel was ineffective in failing to call and/or subpoena petitioner for attendance at suppression hearing since petitioner's presence was warranted, and needed in order to disprove any admittance of any evidence offered by Commonwealth

3.   Petitioner did not waive his right to be present at suppression hearing, nor did he consent to trial counsel's waiving of his attendance; he was prejudiced by counsel's omissions and actions

4.   Trial court erred in failing to colloquy the petitioner as to waiving his presence within a critical stage of the proceeding based on counsel's word

5.   Testimony at suppression hearing was hearsay testimony

6.   Trial counsel failed to locate petitioner's alibi witnesses

7.   Trial counsel failed to request missing witness instruction

8.   Trial counsel was ineffective in failing to raise Rule 1100 – if trial was timely, alibi witnesses may have been located

PCRA Appeal

1.      PCRA court improperly dismissed claim due to following errors:

      a.      Due process violations, trial, appellate and post-conviction counsel ineffectiveness

      b.      Post conviction counsel committed fraud by making false statements about an exculpatory witness

      c.      Post conviction counsel failed to follow rules of criminal procedure and statutory laws of Commonwealth by proffering claims to court but failing to produce evidence to prove claims

      d.      Post conviction counsel failed to raise several claims of ineffectiveness on trial counsel and appellate counsel for failing to raise or preserve issues of arguable merit

2.      The Court denied the petitioner his right to due process to fair trial and to confront and cross examine witnesses by conducting the pre-trial suppression hearing in petitioner's absence. Defense counsel waived petitioner's presence at the suppression hearing even though he had no authorization from petitioner to do so.

      a.      Post conviction counsel was ineffective for not raising the miscarriage of justice by appellant counsel who informed the Superior Court that petitioner was present at the suppression hearing.  Appellant counsel was ineffective and thus denied petitioner his constitutional right to direct appeal and to the effective assistance of counsel as well as due process of law.

3.      Defense counsel was ineffective when he failed to locate and call alibi witness Michael Harrington.

4.      Commonwealth violated discovery and denied petitioner a fair trial by calling witness Joan Dutton and giving petitioner only 2 days notice.  According to court records, Joan Dutton was prosecuted for burglary, conspiracy and theft and sentenced to one year probation. Defense counsel failed to use her prior record of crimen falsi to impeach this witness.

5.      Post conviction counsel failed to raise claim of trial court abusing its discretion by refusing to charge jury on elements of criminal attempt where petitioner was charged with criminal

attempt to commit involuntary deviate sexual intercourse, thus denying defendant due process of law, thus trial counsel was ineffective for not objecting to the court's omission of the two elements of criminal attempt and for not raising this issue in post trial motions to preserve this issue for appellate review.

6.   PCRA counsel was ineffective for failing to raise Commonwealth's violation of <u>Brady</u> Violating petitioner's due process rights.  Counsel raised a discovery issue and trial counsel's ineffectiveness for failing to effectively cross examine witness about her criminal record.

7.   PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for denying petitioner the right under the 5th Amendment to testify in his own behalf

8.   PCRA counsel ineffectiveness for failing to raise the identification by 2 Commonwealth witnesses, where it can be shown that out of court identification was unduly suggestive and in-court identification had no objective basis.  Counsel also failed to raise trial counsel' ineffectiveness for objecting, but no preserving this issue for appellate review.

9.   PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to raise and preserve the issue of prosecutorial misconduct for failing to correct false testimony by Officer Dougherty.  Trial counsel failed to object to such false testimony, thus petitioner was prejudiced by such presentation of the inadmissible evidence.

10.  PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failure to raise in post trial motion or preserve for appellate review the issue of prosecutorial misconduct, when the Commonwealth, in closing, misstated its key witnesses testimony, and vouched for the credibility of another witness who had a criminal record for crimes of crime false.  Trial counsel moved for a mistrial on this issue.  Petitioner was also denied due process of law.

11.  PCRA counsel ineffectiveness for failing to raise trial counsel ineffectiveness for failing to raise such in post trial motions or preserve for appellate review issue of prosecutorial misconduct for eliciting false testimony from 2 of its eye witnesses, when both made in court identifications of petitioner over objections by defense counsel, they both testified to something that was not in their original statements to police at time of alleged crime.

12.  PCRA counsel ineffectiveness for failure to raise trial counsel's ineffectiveness for failing to raise or preserve for appellate review the issue of the Commonwealth failing to meet its burden of proving that the evidence was not obtained in violation of petitioner's due process

rights, identification evidence, of which was elicited at the suppression hearing.

13.   PCRA counsel ineffectiveness for failure to raise trial counsel's ineffectiveness for failing to argue in closing argument that "As a matter of law the jury must consider the first statement given by a witness as the most reliable." Trial counsel also failed to request a point for charge for the trial court to that effect, thus denying due process.

14.   PCRA counsel was ineffectiveness for not raising trial counsel's ineffectiveness for failing to request a <u>Kloiber</u> instruction based on the fact that the 2 Commonwealth witnesses revealed that it was dark outside, thus depriving petitioner of due process.

15.   PCAR counsel was ineffective for not raising trial counsel's ineffectiveness for failing to object to court's erroneous instruction on prior inconsistent statements, thus denying the petitioner due process of law.

16.   Appellant counsel was ineffective for not raising trial counsel's ineffectiveness on direct appeal, thus denying petitioner his constitutional right to the effective assistance of counsel on direct appeal as defined by both the U.S. Constitution and the Pa State Constitution.

## CLAIMS

A.    *Habeas Claim:* Trial court abused its discretion when it refused to define the charged offense of criminal attempt to the jury.

*Closest raised claim on PCRA Appeal:*  Post conviction counsel failed to raise claim of trial court abusing its discretion by refusing to charge jury on elements of criminal attempt where petitioner was charged with criminal attempt to commit involuntary deviate sexual intercourse, thus denying defendant due process of law, thus trial counsel was ineffective for not objecting to the court's omission of the two elements of criminal attempt and for not raising this issue in post trial motions to preserve this issue for appellate review.

_____

B.    *Habeas claim:* Trial court lacked subject matter jurisdiction because the crime of criminal attempt was not included in the criminal information.

*Closed raised claim:* None

_____

C.    *Habeas claim:* Trial counsel was ineffective for (1) failing to raise prosecutorial misconduct for the prosecution's failure to correct the false testimony by police officer Michael Dougherty and (2) failing to object to such false testimony which was inadmissible, thereby denying petitioner a fair trial and due process.

*Closest related claim:* PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failing to raise and preserve the issue of prosecutorial misconduct for failing to correct false testimony by Officer Dougherty.  Trial counsel failed to object to such false testimony, thus petitioner was prejudiced by such presentation of the inadmissible evidence.

_____

D.    *Habeas claim:* Trial counsel was ineffective for failing to preserve the issue of prosecutorial misconduct when the prosecution misstated its key witness's testimony and vouched for the credibility of another witness who had a criminal record during closing arguments.

*Closest related claim:* PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for failure to raise in post trial motion or preserve for appellate review the issue of prosecutorial misconduct, when the Commonwealth, in closing, misstated its key witnesses testimony, and vouched for the credibility of another witness who had a criminal record for crimes of crime false. Trial counsel moved for a mistrial on this issue. Petitioner was also denied due process of law.

_____

E.    *Habeas claim:* Trial counsel was ineffective for failing to raise or preserve the issue of the Commonwealth's failure to meet its burden of showing that the identifications made at the suppression hearing were not obtained in violation of petitioner's due process rights.

*Closest related claim:* PCRA counsel ineffectiveness for failing to raise the identification by 2 Commonwealth witnesses, where it can be shown that out of court identification was unduly suggestive and in-court identification had no objective basis. Counsel also failed to raise trial counsel' ineffectiveness for objecting, but no preserving this issue for appellate review.

_____

F.    *Habeas claim:* Trial counsel was ineffective for failing to preserve the claim that the prosecutor committed misconduct by eliciting false testimony from two witnesses.

*Closest related claim:* PCRA counsel ineffectiveness for failing to raise trial counsel ineffectiveness for failing to raise such in post trial motions or preserve for appellate review issue of prosecutorial misconduct for eliciting false testimony from 2 of its eye witnesses, when both made in court identifications of petitioner over objections by defense counsel, they both testified to something that was not in their original statements to police at time of alleged crime.